The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JEFFREY HILL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ALBERTSONS LLC, a foreign limited liability company, *et al.*,

Defendants.

No. 2:25-cv-01216-RSL

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Pursuant to Local Civil Rule 7(n), Plaintiff Jeffrey Hill provides the Court with notice of relevant authority issued after Plaintiff's last brief was filed.

Attached is the Washington Supreme Court's opinion in *Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0, 2025 Wash. LEXIS 442 (Sept. 4, 2025).

*Branson* is relevant to Plaintiff's Motion to Remand, ECF No. 13, Defendants' Response to Plaintiff's Motion to Remand, ECF No. 15, and Plaintiff's Reply in Support of Motion to Remand, ECF No. 17.

Respectfully submitted this 9th day of September 2025.

EMERY | REDDY, PLLC

By:     */s/ Timothy W. Emery*
Timothy W. Emery, WSBA No. 34078

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

Patrick B. Reddy, WSBA No. 34092
Paul Cipriani, WSBA No. 59991
Emery Reddy, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106
Fax: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
Email: paul@emeryreddy.com

*Attorneys for Plaintiff*

NOTICE OF SUPPLEMENTAL AUTHORITY - 2

No. 2:25-cv-01216-RSL

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 9, 2025, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the following CM/ECF participants:

D. Michael Reilly, WSBA #14674
Priya B. Vivian, WSBA #51802
Erin M. Wilson, WSBA #42454
Ballard Spahr LLP
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Telephone: (206) 223-7000
Email: reillym@ballardspahr.com
Email: vivianp@ballardspahr.com
Email: wilsonem@ballardspahr.com

Dated this 9th day of September, 2025, at Seattle, Washington.


                            */s/ Jennifer Chong*
                            Jennifer Chong, Legal Assistant
                            jennifer@emeryreddy.com

NOTICE OF SUPPLEMENTAL AUTHORITY - 3

No. 2:25-cv-01216-RSL

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

ATTACHMENT 1

**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 4, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 4, 2025

SARAH R. PENDLETON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | No. 103394-0 |
| LISA BRANSON and CHERIE BURKE, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | En Banc |
| v. | |
| WASHINGTON FINE WINE & SPIRITS, LLC, a Washington limited liability company doing business as TOTAL WINE & More; and DOES 1-20, | Filed: <u>September 4, 2025</u> |
| Defendants. | |

MADSEN, J.—In 2022, the legislature amended the Washington Equal Pay and Opportunities Act (EPOA), ch. 49.58 RCW, to require employers with 15 or more employees to disclose wage scale, salary range, and benefits information in all job postings, effective January 1, 2023. RCW 49.58.110. Violations of this statute entitles employees and job applicants to the remedies listed in RCW 49.58.060-.070. RCW

No. 103394-0

49.58.110(4).[1]  This case concerns the interpretation of the key term "job applicant" in

RCW 49.58.110(4).  The federal district court has asked this court to determine what a

plaintiff must prove to be deemed a "job applicant."  We hold that a plaintiff must apply

to a specific job posting but is not required to prove they are a "bona fide" or "good faith"

applicant to obtain remedies under the statute.

BACKGROUND

The defendant, Washington Fine Wine and Spirits LLC, which does business as

Total Wine and More (Total Wine), is a Washington limited liability company that owns

and operates 13 retail liquor stores throughout Washington.  All job openings at Total

Wine are posted on their official website, and some of their retail stores also use third-

party sites such as Indeed.com.[2]

After the effective date in RCW 49.58.110, plaintiffs Lisa Branson and Cherie

Burke submitted applications for job openings at the defendant's retail stores.  Branson

submitted an application through Indeed.com for a retail sales associate position at Total

Wine's Tukwila store; however, the job posting for that position did not include the

salary or wage range as required by the EPOA.  Similarly, Burke applied for a

cashier/customer service position at Total Wine's Tukwila store through Indeed.com and

through Total Wine's official website; however, the job posting on Indeed.com did not

include the required pay range information.  Unlike Branson, Burke had an in-person

---

[1] Effective July 27, 2025, RCW 49.58.110(4) and (5) provide the exclusive remedies available for violations of the statute.  *See* LAWS OF 2025, ch. 383, §§ 4-6.  The amendments do not impact our analysis of a "job applicant" who is eligible for these remedies.
[2] All job postings on Total Wine's official website, under the "Career Search" button include salary and wage ranges.

No. 103394-0

interview for the position and discussed pay with the Tukwila store manager. Burke did

not accept the offer made to her by Total Wine for the position.

Subsequently, Branson and Burke filed an amended class action complaint against

Total Wine in King County, invoking their right to statutory damages under RCW

49.58.070 and RCW 49.58.110 for Total Wine's failure to post the required wage scale or

salary range in its job postings on Indeed.com. Total Wine filed a motion to bifurcate

discovery, arguing that the plaintiffs are not the type of "job applicants" the EPOA

intended to protect since the statute is meant to protect "bona fide" applicants. The

plaintiffs opposed the motion, and the parties disputed the meaning of "job applicant" in

the EPOA.

The United States District Court for the Western District of Washington then

certified the following question: "What must a Plaintiff prove to be deemed a 'job

applicant' within the meaning of RCW 49.58.110(4)? For example, must they prove that

they are a 'bona fide' applicant"? Ord. Certifying Question to Wash. State Sup. Ct. at 2

(W.D. Wash. Aug. 20, 2024). We accepted certification.

ANALYSIS

Certified questions are questions of law that this court reviews de novo and in light

of the record certified by the federal court. *Lopez Demetrio v. Sakuma Bros. Farms*, 183

Wn.2d 649, 655, 355 P.3d 258 (2015). Statutory interpretation is also an issue of law we

review de novo. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 457, 430

P.3d 655 (2018).

No. 103394-0

We are asked to interpret the statutory term "job applicant" within RCW 49.58.110(4). Our "fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). In addition to looking at the plain language to determine legislative intent, we consider "the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (citing *Campbell & Gwinn*, 146 Wn.2d at 9-10). If the plain language of the statute is clear and subject to only one reasonable interpretation, then we look no further. *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013). A term does not become ambiguous "merely because multiple interpretations are conceivable" but rather when it is subject to more than one reasonable interpretation. *Id.*

The Plain Language of "Job Applicant" in RCW 49.58.110(4)

The EPOA, formerly known as the Equal Pay Act, was enacted in Washington in 1943 to prohibit gender-based pay discrimination. *See* LAWS OF 1943, ch. 254, § 1. In 2018, the EPOA was expanded to enhance enforcement by allowing the Department of Labor and Industries (L&I) to investigate complaints made by employees for violations of the act. *See* RCW 49.58.060. In 2019, the EPOA was further expanded to require that employers provide the wage or salary range or minimum wage to a job applicant upon

4

No. 103394-0

their request after an initial job offer had been made by the employer.  Former RCW

49.58.110(1) (2019).

In 2022, the legislature amended RCW 49.58.110(1) to require employers to

disclose salary, wage, and benefits information in all job postings.  Now, wage or salary

ranges must be provided in all job postings regardless of whether an applicant requests

the information or whether they receive a job offer.  As it currently stands, RCW

49.58.110 states in relevant part:

> (1) The employer must disclose in each posting for each job opening the
> wage scale or salary range, and a general description of all of the benefits
> and other compensation to be offered to the hired applicant. For the
> purposes of this section, "posting" means any solicitation intended to
> recruit job applicants for a specific available position, including recruitment
> done directly by an employer or indirectly through a third party, and
> includes any postings done electronically, or with a printed hard copy, that
> includes qualifications for desired applicants.
>          . . . .
>      (4) A *job applicant* or an employee is entitled to the remedies in
> RCW 49.58.060 and 49.58.070 for violations of this section.

(Emphasis added.)

RCW 49.58.110(4) provides two potential remedies for job applicants and

employees.  First, they may either submit a complaint to L&I, who may then initiate an

investigation for EPOA violations.  *See* RCW 49.58.060.  Second, they may bring a civil

action against an employer for actual damages or "statutory damages equal to the actual

damages or five thousand dollars, whichever is greater," among other relief.  RCW

49.58.070(1).[3]

---

[3] Aaron's LLC amicus brief argues that although job applicants are entitled to the remedies prescribed in
RCW 49.58.070, the statute creates a private right of action only for *employees*.  Included in its argument

No. 103394-0

The legislature did not provide a definition for the term "job applicant" in chapter 49.58 RCW. Both parties agree that the plain language of the term resolves the question before us; however, they disagree on the correct definition of the term. The defendant argues that the term in the context of the EPOA has a readily ascertainable meaning, which is "a person who formally notifies an employer of the person's genuine interest in filling a specific posted job." Answering Br. of Resp't-Def. Wash. Fine Wine & Spirits LLC (Br. of Resp't) at 26. Total Wine concludes that a "job applicant" "must be a person who actually applied for the job with a good faith or bona fide interest in obtaining the posted job." *Id*. at 62. The plaintiffs argue that the legislature intended the term to conform to its universally accepted definition and ask us to hold that the term unambiguously means "any person who applies to a job posting." Opening Br. of Pls./Appellants at 24. We agree with the plaintiffs.

Since the statute does not provide a definition of the term, we look to dictionary definitions "'to determine a word's plain and ordinary meaning.'" *State v. M.Y.G.*, 199 Wn.2d 528, 532, 509 P.3d 818 (2022) (plurality opinion) (quoting *Am. Legion Post No. 32 v. City of Walla Walla*, 116 Wn.2d 1, 8, 802 P.2d 784 (1991)). The term "applicant" is defined as "one who applies for something **:** one who makes a usu[ally] formal request esp[ecially] for something of benefit to himself." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 105 (2002). Another dictionary defines it similarly as "[o]ne who applies or makes request" OXFORD ENGLISH DICTIONARY 405-06 (1993).

---

is that the rule of lenity supports a finding that job applicants do not have a private right of action under the EPOA. However, this court need not consider issues raised solely by amici. *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984)

No. 103394-0

The related term "apply" means "to make an appeal or a request esp[ecially] formally and often in writing and usu[ally] for something of benefit to oneself."  WEBSTER'S, *supra*, at 105.  These definitions do not rely on the subjective intent of an individual to determine whether a person is an applicant.  They simply require that an individual submits a formal application or request for a job.

Total Wine argues that a "job applicant" must possess an intent or genuine interest in obtaining a job.  The plaintiffs contend that subjective intent is irrelevant because the legislature could have included qualifying language to the statute, such as "bona fide" job applicant, if it intended to limit the type of job applicant who is entitled to remedies.  Total Wine counters that if the legislature added qualifying language it would be "mere surplusage when the meaning of the term is clear without [it]."  Br. of Resp't at 25.  It contends that bots or deceased relatives could recover under the statute since the legislature did not write "'human job applicant.'"  *Id*. at 26.  It further argues that the plaintiffs' interpretation would mean that the legislature intended to protect individuals who submit applications in bad faith.  Total Wine's argument overlooks the language in the definition of "applicant," which refers to a person or "one who applies" for something, which indicates a living human.  Thus, we need not be concerned that bots, pets, or deceased individuals will pursue claims as "job applicants."

The plain language of the term "job applicant" means a person who applies to a job posting, regardless of their subjective intent in doing so.  We must give effect to that

No. 103394-0

meaning.[4]  *Broughton Lumber Co. v. BNSF Ry. Co.*, 174 Wn.2d 619, 627, 278 P.3d 173 (2012).

The statutory scheme supports the plaintiffs' interpretation.  In the "Findings— Intent" section of the EPOA, the legislature found that "there continues to be a gap in wages and advancement opportunities among workers in Washington, especially women," which has led to "higher rates of poverty among women and children."  RCW 49.58.005(1).  The legislature intended to "address income disparities, employer discrimination, and retaliation practices, and to reflect the equal status of all workers in Washington state."  RCW 49.58.005(2).

Over time, the legislature has expanded the protections afforded to employees and applicants, demonstrating the legislature's concern with ending income disparities and gender inequality.  For example, it amended former RCW 49.58.110(1) to require that employers include wage scale or salary range information in each job posting made by the employer or indirectly through a third party rather than waiting until after an applicant is offered a position.

Other sections of the EPOA also support our interpretation of the term.  "[W]here the legislature includes particular language in one section of a statute but omits it in another, the exclusion is presumed intentional."  *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 680, 389 P.3d 476 (2017).  Here, the legislature has included

---

[4] If the legislature intends to limit the statute to bona fide job seekers, it can amend the statute as was recently attempted, by defining the term "job applicant" in RCW 49.58.110 as "a person who has made and submitted a bona fide application for employment."  H.B. 2349, at 2, 68th Leg., Reg. Sess. (Wash. 2024); S.B. 6241, at 2, 68th Leg., Reg. Sess. (Wash. 2024); s*ee also* LAWS OF 2025, ch. 383 (not defining or adding qualifying language to the term "job applicant").

No. 103394-0

qualifying language in other parts of the EPOA, which indicates that it purposely omitted qualifying language in RCW 49.58.110(4). For example, in RCW 49.58.110(1) the legislature used the term "desired applicants" in its definition of "posting." The legislature also included the term "bona fide" in other sections of the EPOA. *See* RCW 49.58.020-.030 (referring to good faith, bona fide job-related factors that justify a differential in compensation). The legislature could have included the same qualifying language here but chose not to. "'[A] court must not add words where the legislature has chosen not to include them.'" *Lucid Grp. USA, Inc. v. Dep't of Licensing*, 33 Wn. App. 2d 75, 81, 559 P.3d 545 (2024) (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)), *review denied*, 4 Wn.3d 1021 (2025).

Additionally, RCW 49.44.200(1) prohibits employers from requesting or requiring "an employee or applicant" to disclose login information for their personal social networking accounts. The statute states that "applicant" "means an applicant for employment." RCW 49.44.200(5)(b). The definition of "applicant" is broadly defined and does not mention the subjective intent of the applicant. An employee or applicant is provided a private right of action for violations under RCW 49.44.205. If the legislature intended to add a qualifier to the term "job applicant," it could have done so as it did in RCW 49.94.010(1), which restricts employers from requesting information about an applicant's criminal record until the employer has initially determined that the applicant is "otherwise qualified." "'Otherwise qualified' means that the applicant meets the basic criteria for the position as set out in the advertisement or job description without consideration of a criminal record." RCW 49.94.005. Total Wine contends that

9

No. 103394-0

individuals may apply for positions they are clearly unqualified for and then bring suit. However, if the legislature intended only "qualified job applicants" to be entitled to remedies, it could have included similar limiting language in RCW 49.58.110(4).

Even if the term "job applicant" is ambiguous, the legislative history of RCW 49.58.110(4) supports defining the term more broadly. *See Perez-Crisantos*, 187 Wn.2d at 680 (when there is ambiguity in a statute, courts have turned to extrinsic evidence of legislative intent). In 2022, the legislature recognized the importance of individuals being provided with pay-related information "*before* they apply for a job" in order to combat pay inequity, avoid wasted time, and "make our market more competitive."[5] Engrossed Substitute Senate Bill 5761 now requires employers to disclose hourly or salary compensation and a general description of all benefits in each posting for each job opening. *See* ENGROSSED SUBSTITUTE S.B. 5761, 67th Leg., Reg. Sess. (Wash. 2022).

The initial version of Senate Bill 5761 (S.B. 5761) stated that "[a]n *individual* is entitled to the remedies in RCW 49.58.060 and 49.58.070 for violations of this section." *Id.* (emphasis added). At the public hearing in the Senate Committee on Labor, Commerce & Tribal Affairs, L&I raised concerns about the cost of the bill, including for investigating complaints, and noted that anyone may file a complaint, not just applicants or employees. The agency suggested changing the term "individual" to "job applicant or an employee." S.B. REP. ON S.B. 5761, at 2-3, 67th Leg., Reg. Sess. (Wash. 2022).

---

[5] S. Floor Debate on Engrossed Substitute S.B. 5761, 67th Leg., Reg. Sess. (Feb. 9, 2022)), at 11 min., 05 sec. to 11 min., 15 sec, *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/senate-floor-debate-february-9-2022021162/?eventID=2022021162 (former Senator Emily Randall, the prime sponsor of the bill, testifying in favor of its passage).

No. 103394-0

The committee revised the bill to make that change.  This means that the

legislature specifically considered who could obtain remedies under the statute and

limited protection to those individuals who actually applied for the job.  Significantly, the

legislature did not include any further limitation.

L&I's Internal Policies

Under RCW 49.58.090, L&I is authorized to adopt rules to implement RCW

49.58.005 and 49.58.020-.060.  Total Wine states that although RCW 49.58.110 does not

fall under the listed provisions subject to L&I's rule making, L&I's rule making extends

to RCW 49.58.005, which announces the legislative intent for the EPOA.  This includes

the legislature's intent "to require an employer to provide wage and salary information to

applicants and employees."  RCW 49.58.005(4).  Total Wine argues that since L&I has

the authority to administer the EPOA within the full scope of the legislature's intent and

also has the requisite expertise to carry out that authority, we should give the agency's

interpretation of an *ambiguous* statute great weight in determining legislative intent.

"'[A]gency interpretations of statutes are accorded deference only if "(1) the

particular agency is charged with the administration and enforcement of the statute, (2)

the statute is ambiguous, and (3) the statute falls within the agency's special expertise."'"

*Lucid Grp. USA, Inc.*, 33 Wn. App. 2d at 80 (emphasis omitted) (quoting *Fode v. Dep't*

*of Ecology*, 22 Wn. App. 2d 22, 33, 509 P.3d 325 (2022) (quoting *Bostain v. Food*

*Express, Inc.*, 159 Wn.2d 700, 716, 153 P.3d 846 (2007))).  However, courts are not

bound by agency interpretation as courts have the ""'"ultimate authority to interpret a

statute."'"  *Id*. (quoting *Port of Tacoma v. Sacks*, 19 Wn. App. 2d 295, 304, 495 P.3d 866

No. 103394-0

(2021) (quoting *Bostain*, 159 Wn.2d at 716)).  Under RCW 49.58.060(1), L&I is tasked

with investigating complaints made by job applicants and employees to determine if there

has been a violation of the EPOA.  If a violation has occurred, L&I may, among other

things, "order the employer to pay to the complainant actual damages; statutory damages

equal to the actual damages or five thousand dollars, whichever is greater."  RCW

49.58.060(2)(a).

   In administering and enforcing RCW 49.58.060, L&I issued F700-200-000, which

is a complaint form that also addresses who can file a complaint.  It states that "L&I will

investigate complaints filed by applicants who have applied to a job in good faith with

the intent of gaining employment.  L&I generally only assesses damages when an

applicant can establish they have suffered a financial loss as a result of a violation of the

law."  WASH. STATE DEP'T OF LAB. & INDUS., EQUAL PAY & OPPORTUNITIES ACT

COMPLAINT FORM at 1 (July 2025), https://lni.wa.gov/forms-publications/F700-200-

000.pdf [https://perma.cc/FH2P-2CWL].

   Total Wine points to this form to support its interpretation that "job applicants"

must be people who apply for jobs in good faith or have a bona fide intention of gaining

employment.  However, L&I does not have rule making authority over the meaning of

the term "job applicant," and the meaning of "job applicant" is not ambiguous.

Moreover, L&I does not define the term "job applicant" but instead defines the

complaints it will investigate.  Considering the concern raised by L&I regarding cost to

the agency, it is likely its limitation is due to its limited resources.  As noted, the agency

already expressed concerns regarding the costs of investigating complaints, which is why

No. 103394-0

it urged the legislature to amend S.B. 5761 to limit the remedies afforded to job

applicants and employees instead of any individual.  *See* S.B. REP. ON S.B. 5761, at 3.

Significantly, in 2024, L&I published its preliminary draft rule language for the

EPOA, which included a definition of the term "applicant."  It defined the term as "an

individual, including existing employees, who submits in good faith an application for a

job posting with the intent of gaining employment."  Pls./Appellants' Statement of

Additional Auths., Attach. A at 1.  In response, seven members of the Washington State

House of Representatives signed and submitted a public comment letter.  The letter

stated:

> We are concerned the current draft undermines the Legislature's intent.
> Specifically, the definition of "applicant" in the preliminary draft (and the
> specification that job applicants or employees must demonstrate lost
> compensation to recover damages each undermine key components of the
> EPOA).
>         . . . .
>         We have historically declined to qualify or narrow the definition of
> "applicant" because we intend for this unambiguous term to be understood
> by its plain and ordinary meaning.  For the EPOA's salary disclosure
> requirement to work as intended, anyone who applied to the job must have
> access to the remedies we set out in RCW 49.58.060 and .070.  Requiring a
> job applicant to prove subjective "intent" adds a new element to the cause
> of action in order to access remedies [and] would frustrate a key purpose of
> the statute[.]  This is the opposite of our intent.

*Id.*, Attach. B at 1.  To avoid contradicting the legislature's intent, included in the letter

was a request that L&I remove the definition of "applicant" and remove the requirement

that a job applicant or employee demonstrate actual damages.  It reasoned that statutory

damages were provided under both RCW 49.58.060 and .070 because most violations of

.110 do not result in provable monetary loss, and the legislature wants "to ensure

13

No. 103394-0

compliance with the statute by allowing job applicants and employees to recover reasonable statutory damages for violations." *Id*. at 2.

Subsequently, L&I published an updated version of its draft rule language, removing the definition of applicant, and removing the requirement that job applicants and employees demonstrate actual damages. *See id.*, Attach. C at 1, 6. Total Wine's reliance on L&I's definition of "job applicant" is misplaced.

The Plain Meaning of "Job Applicant" Does Not Produce Absurd Results

Lastly, Total Wine argues that construing "job applicant" to mean anyone who applies to a job opening regardless of their subjective intent yields unlikely, absurd, and strained consequences.

"Where the legislature provides no statutory definition and a court gives a term its plain and ordinary meaning by reference to a dictionary, the court 'will avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences.'" *Tingey v. Haisch*, 159 Wn.2d 652, 663-64, 152 P.3d 1020 (2007) (quoting *Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Ord. of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002)). "[I]t will not be presumed that the legislature intended absurd results." *State v. Delgado*, 148 Wn.2d 723, 733, 63 P.3d 792 (2003) (Madsen, J., dissenting) (citing *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983)).

As mentioned previously, the defendant argues that under this definition people who are not qualified, who are incarcerated, who are living abroad, or who are serial plaintiffs looking for lawsuits fall under the statute. It contends that the absurd consequences are magnified in the context of class action litigation since nothing would

No. 103394-0

prevent thousands of individuals from applying to a position they are unqualified for.
This could potentially result in tremendous class action liability on large and small
businesses alike.[6]  Further, defendant argues that it would incentivize plaintiffs to commit
fraud by seeking employment at businesses they have no interest in working at,
meanwhile punishing employers "well beyond any conceivable calculation of the harm
the EPOA was designed to address."  Br. of Resp't at 30.  It asserts that employers will
be punished for mere mistakes and that serial plaintiffs who suffered little to no harm will
recover statutory damages.[7]  We disagree.

    In order to best effectuate the statute's intended purpose of eradicating pay-based
discrimination, it follows that the term "job applicant" should be more broadly defined.
Narrowing the term "job applicant" to those who applied for the job in good faith or have
a bona fide interest in obtaining the posted job would shift the onus from employers to
comply with the EPOA and put the burden on applicants to show that they applied in
good faith despite not being provided the required pay expectations in the relevant job

---

[6] Amicus argues that allowing anyone who submits a job application to be entitled to statutory damages
violates the Fourteenth Amendment to the United States Constitution since it can result in severe penalties
in the class action context that are disproportionate to the offense.  Amicus Curiae Br. by Rest. L. Ctr.,
Wash. Hosp. Ass'n & Int'l Franchise Ass'n at 7.  However, this argument was not raised by the defendant
and is not within the scope of the certified question; therefore, we decline to consider the issue.
[7] Both the defendant and amici argue that the job applicants who do not have a good faith intent to obtain
employment lack statutory standing because they are not within the zone of interest protected by the
statute and because they have not suffered an injury in fact, economic or otherwise.  We decline to
address the standing argument, as it is beyond the scope of the certified question.  *See Carlsen v. Glob.
Client Sols., LLC*, 171 Wn.2d 486, 495 n.2, 256 P.3d 321 (2011) (declining to address the possibility of
preemption since it is beyond the scope of the district court's certified question).  The dissent argues that
we silently address whether a legislatively created statute can grant a plaintiff the right to sue even though
that plaintiff has suffered no harm and is not within the protected zone of interest.  We disagree.  Our
holding is limited to interpreting the term "job applicant" in RCW 49.58.110(4).  However, we observe
that if a plaintiff meets the definition of job applicant, the plaintiff likely is within the protected zone of
interest.

No. 103394-0

posting.  Further, it is unclear what it means to be a "good faith" or "bona fide" job applicant.  Does it require that a person have all of the qualifications and preferences listed in the job posting?  Must the applicant prove they would have accepted the job if given an offer from the employer?  The reality is that many individuals apply for multiple job postings when they are seeking employment and may not have all the qualifications listed.  To interpret the term "job applicant" in the manner advocated by the defendant would discourage applicants from bringing suit against employers for fear of costly litigation and intrusion into their personal lives to prove that they are "bona fide" applicants.

The legislature did not intend to make it more difficult for job applicants to recover for violations of the EPOA.  Rather, in providing statutory damages as a potential remedy, it intended to hold employers accountable regardless of an applicant's ability to show actual damages since proving damages in these situations is difficult.  If the consequences of violating the plain language of the EPOA are too onerous, the legislature is in the best position to amend the statute to mitigate the liability employers face.[8]

---

[8] Effective July 27, 2025, RCW 49.58.110 is amended to provide employers an opportunity to correct a violation of RCW 49.58.110(1) within five days of being notified of the violation before a job applicant or employee may seek remedies.  *See* LAWS OF 2025, ch. 383, § 1(b).  If the employer corrects the posting within five business days or contacts any applicable third-party posting entity with a demand to correct the job posting, then "neither the department nor the court may assess or award penalties, damages, or other relief . . . for the violation."  *Id.*  This revision to the current statute addresses employers' concerns regarding liability while maintaining the burden on the employer to comply with the EPOA instead of placing the burden on the plaintiff to prove their motive for applying.

No. 103394-0

CONCLUSION

We answer the example raised in the certified question no.  A job applicant need not prove they are a "bona fide" applicant to be deemed a "job applicant." Rather, in accordance with the plain language of RCW 49.58.110(4), a person must apply to any solicitation intended to recruit job applicants for a specific available position to be considered a "job applicant," regardless of the person's subjective intent in applying for the specific position.

_____
Madsen, J.

WE CONCUR:

_____
Stephens, C.J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

_____
Mungia, J.

17

*Branson v. Wash. Fine Wine & Spirits, LLC*

No. 103394-0

GORDON McCLOUD, J. (dissenting)—Washington's Equal Pay and
Opportunities Act (EPOA) requires every employer of 15 or more employees to
disclose the wage scale or salary range and benefits for each job opening it
advertises. RCW 49.58.110(1). The EPOA then gives every "job applicant or . .
. employee" the right to sue for violations of this provision; the remedies
include "statutory damages equal to the actual damages or five thousand dollars,
whichever is greater." RCW 49.58.110(4); RCW 49.58.070(1).

The federal district court has asked us who qualifies as a "job applicant"
entitled to seek those "actual damages" or that "five thousand dollars" in
statutory penalties under RCW 49.58.110(4). Specifically, it asked whether a
job applicant must be "bona fide."

The majority answers this question "no." It holds that any person who
submits a job application in response to a noncompliant posting is entitled to
$5,000 worth of statutory damages—even if that person's sole intent is to
collect a damages award, not to redress any personal harm and not to obtain an
offer of employment.

1

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

But the legislature enacted the EPOA to protect Washington workers and to fight employer discrimination. It did not enact the EPOA to give bounty seekers an incentive to trawl the Internet for noncompliant job postings to obtain a statutory damages award unrelated to any personal harm. This legislative intent shows in the statute's language in context, in its legislative history, and in the relevant agency's interpretation. The majority's definition of "job applicant" misconstrues those sources, misstates the legislature's intent, and ends up stretching the meaning of "job applicant" to include even plaintiffs who suffered no harm—a class that no legislator sought to protect. This conclusion is not true to the statute and will result in absurd and unintended consequences.

I would answer the certified question by defining "job applicant" in RCW 49.58.110(4) as a person who responds to a job posting for the reason that applicants normally apply, that is, to gain an *offer* of employment. I would avoid using the vague terms "bona fide" or "good faith" in defining "job applicant." And I would not define "applicant" as one who intends to take the job if offered—there are countless legitimate reasons for seeking an offer without committing in advance to take it (such as using the offer as bargaining tool, as an opportunity to learn more about the job duties, or as a time to ask more candid

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

questions about benefits). But an applicant must be seeking an offer, not a
bounty.

This standard is not that demanding, and a plaintiff's credible testimony
alone might well satisfy it. And it is the most reasonable reading of the term "job
applicant," given what the legislature intended to do: protect real applicants from
real harm and provide incentives for employers to comply, while also protecting
employers from potentially ruinous damages awards unrelated to any harm.

FACTS AND PROCEDURAL HISTORY

Plaintiffs Lisa Branson and Cherie Burke are Washington residents who
applied[1] online for retail positions advertised by Washington Fine Wine & Spirits
LLC, which does business as Total Wine & More (Total Wine). Plaintiffs alleged
that the job listings, which were posted on Indeed.com, failed to state the wage
scale for the positions. They sued Total Wine under RCW 49.58.110 on behalf of
themselves and other similarly situated applicants, seeking class certification and
statutory damages of $5,000 per class member, among other relief.

---

[1] A factual dispute exists about whether Branson actually submitted an application.
*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 2:24-cv-00589-JHC, Dkt. 32
(defendant's motion to bifurcate discovery).

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

After removing the case to federal court, Total Wine sought to bifurcate

discovery and limit the first phase of discovery to the named plaintiffs' individual

claims. Total Wine argued that Branson and Burke are not "job applicants" within

the meaning of RCW 49.58.110(4) because they applied for the jobs not to obtain

employment but only to obtain statutory damages awards. Plaintiffs, on the other

hand, argue that the term "job applicant" unambiguously covers any person who

applies for a job, regardless of intent (though both named plaintiffs in this case

allege that they applied for the positions in good faith with the intent to gain

employment as long as the wage scale met their needs).

Several Western District of Washington federal judges have previously ruled

that a job applicant under RCW 49.58.110(4) must allege at least "that they applied

for the job with good-faith intent." *Floyd v. Insight Glob. LLC*, No. 23-cv-1680-

BJR, 2024 WL 2133370, at *8 (W.D. Wash. May 10, 2024) (court order), *amended*

*on reconsideration*, 2024 WL 3199858 (W.D. Wash. June 26, 2024) (court order);

*see also Wright v. HP Inc.*, No. 2:24-cv-01261-MJP, 2024 WL 4678268 (W.D.

Wash. Nov. 5, 2024) (court order). In this case, however, the federal court

determined that Washington courts have not yet decided the meaning of "job

applicant" in this statute. It therefore certified the following question to us: "What

must a Plaintiff prove to be deemed a 'job applicant' within the meaning of RCW

4

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

49.58.110(4)? For example, must they prove that they are a 'bona fide' applicant?"

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 2:24-cv-00589-JHC, Dkt. 44, at 2

(Ord. Certifying Question to Wash. State Sup. Ct.).

ANALYSIS

The legislature enacted RCW 49.58.110 to provide wage and benefit

information to individuals for whom that information is relevant—that is, to

workers seeking a job offer. Interpreting the statute to cover individuals for whom

that information is totally irrelevant—that is, persons with no interest in a job

offer—flouts that legislative intent. I would therefore answer the certified question

as follows: a "job applicant" under RCW 49.58.110(4) is a person who responds to

a job posting by submitting an application with the intent to gain an offer of

employment.

I.     The most reasonable interpretation of RCW 49.58.110(4)'s plain
       language in context is that "job applicant" means a person who submits a
       job application with the intent to obtain a job offer

This case requires us to interpret the statutory term "job applicant."  The

"fundamental objective" of statutory interpretation is to "ascertain and carry out

the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d

1, 9-10, 43 P.3d 4 (2002). To determine the plain meaning of a statute, we consider

"the text of the provision in question, the context of the statute in which the

5

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

provision is found, related provisions, amendments to the provision, and the

statutory scheme as a whole." *Ass'n of Wash. Spirits & Wine Distribs. v. Wash.*

*State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (citing

*Campbell & Gwinn*, 146 Wn.2d at 9-10). If a statute's meaning is plain on its face,

we will give effect to that meaning as an expression of legislative intent. *Campbell*

*& Gwinn*, 146 Wn.2d at 9-10. If the statute is susceptible to more than one

reasonable interpretation after this inquiry, it is ambiguous, and we may consider

extratextual materials to help determine legislative intent, including legislative

history and agency interpretation. *Five Corners Fam. Farmers v. State*, 173 Wn.2d

296, 306, 268 P.3d 892 (2011) (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150

Wn.2d 674, 682, 80 P.3d 598 (2003)); *Bostain v. Food Express, Inc.*, 159 Wn.2d

700, 716, 153 P.3d 846 (2007) (collecting cases).

> A. Plain meaning in context shows the legislature intended to protect
>    workers seeking job opportunities

The current version of RCW 49.58.110 provides, in relevant part:

(1) The employer must disclose in each posting for each job opening
the wage scale or salary range, and a general description of all of the
benefits and other compensation to be offered to the hired applicant.
For the purposes of this section, "posting" means any solicitation
intended to recruit job applicants for a specific available position,
including recruitment done directly by an employer or indirectly
through a third party, and includes any postings done electronically, or

6

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

> with a printed hard copy, that includes qualifications for desired
> applicants.
>
>     . . . .
>
>     (4) *A job applicant* or an employee *is entitled to the remedies* in
> RCW 49.58.060 and 49.58.070 for violations of this section. . . .

(Emphasis added.)

Since the statute does not define the term "job applicant," and it does not

seem to be a term of art, we first consider dictionary definitions to determine its

plain meaning. *State v. Valdiglesias LaValle*, 2 Wn.3d 310, 319, 535 P.3d 856

(2023). As the majority notes, an "applicant" is "'one who applies for something **:**

one who makes a usu[ally] formal request esp[ecially] for something of benefit to

himself.'" Majority at 6 (quoting WEBSTER'S THIRD NEW INTERNATIONAL

DICTIONARY 105 (2002)). Plaintiffs argue that the legislature's use of the term "job

applicant" without any modifiers indicates that the term means "an individual who

applied to a job posting." Opening Br. of Pls./Appellants (Opening Br.) at 59.

Plaintiffs note that the legislature used the modifier "bona fide" in other

employment statutes, suggesting that the legislature's decision to omit such

language from RCW 49.58.110(1) was intentional. *Id.* at 26-27.[2]

---

[2] *See, e.g.*, RCW 49.58.020(3)(b) (providing a civil penalty for gender-based wage
discrimination but excluding from the definition of "discrimination" differences in pay
attributable to "bona fide job-related factor[s]" like education, training, experience,
seniority or merit systems).

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

Plaintiffs' interpretation is certainly plausible. But when interpreting a statute, we must consider the words "in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary." *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008); *Green v. Pierce County*, 197 Wn.2d 841, 853, 487 P.3d 499 (2021) (citing *Campbell & Gwinn*, 146 Wn.2d at 11-12)). Thus, when interpreting statutory terms, we "'take into consideration the meaning naturally attaching to them from the context, and . . . adopt the sense of the words which best harmonizes with the context.'" *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005) (alteration in original) (internal quotation marks omitted) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999)). We must therefore examine the term in the context of the statute, related statutory provisions, and the entire statutory scheme. *Id*.

First, let's step back to consider the overarching purpose of the EPOA's statutory scheme. Fortunately, the legislature explained the EPOA's purpose in its statement of intent. The legislature enacted the EPOA to "address income disparities, employer discrimination, and retaliation practices, and to reflect the equal status of all workers in Washington state." RCW 49.58.005(2). One stated purpose of the law is to address the "gap in wages and advancement opportunities among workers in Washington, especially women." RCW 49.58.005(1). The

8

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

requirement that employers provide wage and salary information to applicants and

employees is part of this goal of moving "towards gender equality." RCW

49.58.005(4). These statements of intent show that the legislature wants to protect

workers seeking jobs and career advancement opportunities and to equalize

bargaining power, especially for historically marginalized groups. These

statements show no intent to benefit persons who are not actually seeking a job

offer or career advancement opportunity.

Next, we move to RCW 49.58.110, the specific statute at issue here.

Originally, the statute provided that "[a]n individual" is entitled to remedies for

violations of the disclosure law. Former RCW 49.58.110(5) (2019). But in 2022,

the legislature amended the statute to limit the availability of relief: it removed the

term "individual" and replaced it with "[a] job applicant or an employee." RCW

49.58.110(4); LAWS OF 2022, ch. 242, § 1. This change reflects legislative intent to

limit relief to those who have some real stake in getting a job offer.

The majority agrees that the EPOA is clearly intended to protect workers

and those seeking work or advancement opportunities. Majority at 8-9. But the

majority fails to explain how its literal interpretation of "job applicant" furthers

that intent. Considering the term in the full context of the EPOA militates in favor

of the conclusion that "job applicant" in RCW 49.58.110 means one of the people

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

whom the legislation was designed to protect: a person who has an interest in

obtaining an offer of employment.

> B.  We avoid literal interpretation of undefined statutory terms that lead
>     to absurd results

Total Wine argues that plaintiffs' interpretation of "job applicant" leads to

absurd consequences. "Where the legislature provides no statutory definition and a

court gives a term its plain and ordinary meaning by reference to a dictionary, the

court 'will avoid literal reading of a statute which would result in unlikely, absurd,

or strained consequences.'" *Tingey v. Haisch*, 159 Wn.2d 652, 663-64, 152 P.3d

1020 (2007) (quoting *Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand*

*Aerie of Fraternal Ord. of Eagles*, 148 Wn.2d 224, 239, 59 P.3d 655 (2002)). We

do not presume that the legislature intends absurd results. *State v. J.P.*, 149 Wn.2d

444, 450, 69 P.3d 318 (2003) (quoting *State v. Delgado,* 148 Wn.2d 723, 733, 63

P.3d 792 (2003) (Madsen, J., dissenting)).

But the majority's literal interpretation of "job applicant" risks just such

absurd consequences: it incentivizes persons with no interest in getting a job offer

to search for noncompliant job postings for the purpose of obtaining a statutory

damages award. Depending on how popular a job posting is, employers could be

exposed to nearly limitless class action liability for a single noncompliant job

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

posting.  I agree with Total Wine that it would be absurd to conclude that the

legislature intended to incentivize plaintiffs to "'seek[] employment' at businesses

where they have no real interest in working" or to "punish[] employers well

beyond any conceivable calculation of the harm the EPOA was designed to

address." Answering Br. of Resp't-Def. Wash. Fine Wine & Spirits, LLC at 30.

To be sure, the prospect of exposure to a hefty damages award provides a

strong incentive for employers to comply with the law. Reply Br. of

Pls./Appellants (Reply Br.) at 14. But the majority's decision to interpret "job

applicant" so expansively that any person in the world can qualify as an

applicant—regardless of whether they fall within the class to be protected or

whether they have suffered any harm—goes too far. [3]

---

[3] It also silently decides a major constitutional question: can a legislatively created statute grant a plaintiff the right to sue even though that plaintiff has suffered no harm or threat of harm and even thought that plaintiff falls outside the class of people whom the statute was designed to protect? The United States Supreme Court says no, under federal law: "Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (alteration in original) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)). Washington courts suggest that the answer is no, under Washington law: "Generally, one must be protected by the provision of a statute to gain standing to sue for a violation of the provision." *McFarland v. Tompkins*, 34 Wn. App. 2d 280, 301, 567 P.3d 1128 (2025). We typically interpret statutes to avoid any question about their constitutionality. *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015) (citing *State v. Robinson*, 153 Wn.2d 689, 693-94, 107 P.3d 90 (2005)). The majority,

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

Plaintiffs contend that interpreting "job applicant" to require intent to accept an offer would be absurd because applicants cannot form intent to accept an offer without knowing the compensation. Reply Br. at 10. I agree that defining "job applicant" as one who applies with an already-formed intent to *accept* a job offer is too limiting. But interpreting "job applicant" to mean a person with intent to *obtain* a job offer avoids that pitfall and furthers the EPOA's purpose of equalizing negotiating power and protecting applicants who lack such power.

Thus, statutory language in context, including the legislature's statement of intent, compels the conclusion that "job applicant" means a person who submits a job application with the intent to obtain a job offer. But even if the statute were ambiguous, legislative history and agency interpretation confirm that the legislature enacted this statute to protect workers seeking job opportunities, not individuals seeking a statutory bounty unrelated to any harm suffered. I discuss this in the next section.

---

however, interprets the statute at issue in this case in a way that poses a serious question about its constitutionality.

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

II.    Even if the statute is ambiguous, legislative history and agency
        interpretation show that the legislature intended to protect workers
        seeking job opportunities, not to protect individuals seeking statutory
        bounties unrelated to harm suffered

If a statute is ambiguous, we may look to legislative history to determine

legislative intent. *Five Corners Fam. Farmers*, 173 Wn.2d at 306. And, while we

retain ultimate authority to interpret a statute, we may place weight on an agency's

interpretation of an ambiguous statute if "the particular agency is charged with the

administration and enforcement of the statute" and "the statute falls within the

agency's special expertise." *Bostain*, 159 Wn.2d at 716 (collecting cases). Here,

those sources—legislative history and agency interpretation—compel the

conclusion that the legislature intended RCW 49.58.110 to protect job applicants

with a real interest in obtaining an offer of employment.

A. Legislative history

The legislative history for S.B. 5761,[4] the 2022 bill that amended RCW

49.58.110 to include the "job applicant" limitation, supports the conclusion that the

legislature intended to protect workers by equalizing the playing field during the

job search and increasing workers' bargaining power. S.B. 5761's sponsor, former

Senator Emily Randall, consistently used the term "job seekers," meaning real

---

[4] S.B. 5761, 67th Leg., Reg. Sess. (Wash. 2022).

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

applicants, as opposed to someone who has no interest in a job offer.[5] For example,

during floor debates, the former senator explained that "we've got a lot of job

seekers who are trying to make the right decisions for themselves and their

families" and stated that the bill is about, in part, "job seekers who should be able

to have all of the relevant information before they apply for a job."[6] Bill cosponsor

Senator Lisa Wellman emphasized that the bill's pay disclosure requirement would

help low-wage hourly workers decide if applying for a job and taking time off to

travel to an interview would make financial sense.[7]

Comments by other legislators—although given less weight than the

sponsors' statements, *Wilmot v. Kaiser Alum. & Chem. Corp.*, 118 Wn.2d 46, 63,

821 P.2d 18 (1991)—reflect the same concern about applicants who are actually

pursuing job offers. *See, e.g.*, testimony of former Representative Noel Frame

---

[5] Contemporaneous comments by the sponsors of a bill are "'entitled to considerable weight.'" *Wash. Bankers Ass'n v. Dep't of Revenue*, 198 Wn.2d 418, 445, 495 P.3d 808 (2021) (quoting *Carlin Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 749 F.2d 113, 116 n.7 (2d Cir. 1984)); *Wash. State Legislature v. Lowry*, 131 Wn.2d 309, 326, 931 P.2d 885 (1997).

[6] S. Floor Debate, ENGROSSED SUBSTITUTE S.B. 5761, 67th Leg., Reg. Sess., (Wash. Feb. 9, 2022), at 10 min., 44 sec. to 11 min., 15 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/senate-floor-debate-february-9-2022021162/?eventID=2022021162.

[7] *Id.* at 16 min., 47 sec. to 17 min., 07 sec.

14

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

(explaining how both parties' time is wasted when an applicant goes through rounds of interviews only to learn that the offered pay is inadequate).[8]

The final bill reports for ENGROSSED SUBSTITUTE S.B. 5761, the 2022 bill that amended RCW 49.58.110, also support this conclusion.[9] The final House and Senate bill reports both contain summaries of testimony (which would have been available to the full legislature when later voting on the bill) suggesting that the bill was intended to "help prospective employees make decisions" and avoid wasting time applying for and interviewing for positions whose salary would be inadequate. S.B. REP. ON ENGROSSED SUBSTITUTE S.B. 5761, at 3. Both bill reports highlight the effect of the amendment on workers' ability to negotiate. The House Bill Report notes that the amendment "allows a discussion at the start of the process instead of after an offer has been made, which will increase the ability to negotiate pay." H.B. REP. ON ENGROSSED SUBSTITUTE S.B. 5761, at 2. The Senate Bill Report states that pay transparency is an equity issue, since "women and people of color . . . get punished for negotiating where white men are rewarded for

---

[8] H. Floor Debate, ENGROSSED SUBSTITUTE S.B. 5761, 67th Leg., Reg. Sess., (Wash. Mar. 1, 2022), at 1 hr., 14 min, 36 sec. to 1 hr., 17 min., 54 sec., https://tvw.org/video/house-floor-debate-march-1-2022031100/?eventID=2022031100.

[9] "The court has frequently looked to final bill reports as part of an inquiry into legislative history." *State v. Bash*, 130 Wn.2d 594, 601, 925 P.2d 978 (1996) (plurality opinion) (citing *State v. Silva-Baltazar*, 125 Wn.2d 472, 479, 886 P.2d 138 (1994)).

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

the same thing." S.B. REP. ON ENGROSSED SUBSTITUTE S.B. 5761, at 3. These

comments suggest that the bill was intended to protect real job seekers—

"prospective employees," particularly those who have been historically

disadvantaged, who need pay information to "negotiat[e]" with an employer to

obtain fair compensation. *Id.*[10] These comments also suggest that the bill was

designed to apply to workers seeking to use a job offer for negotiating purposes.

These bill reports also show the reason that the legislature decided to replace

RCW 49.58.110(4)'s term "individual" with the terms "job applicant or

employee." The Department of Labor & Industries (L&I) itself proposed this

change specifically to limit the class of would-be plaintiffs, because without that

modification, "anyone may file a complaint, not just applicants or employees."

S.B. REP. ON ENGROSSED SUBSTITUTE S.B. 5761, at 3. Once again, this strongly

suggests that the legislature intended to narrow the class of persons entitled to a

remedy to those with a real stake in the matter.

Plaintiffs note that the House and Senate each introduced a bill in January

2024 that would have amended RCW 49.58.110 to add a section defining "job

---

[10] *See also* S. REP. ON ENGROSSED SUBSTITUTE S.B. 5761, at 3, 67th Leg., Reg.
Sess. (Wash. 2022), https://lawfilesext.leg.wa.gov/biennium/2021-
22/Pdf/Bill%20Reports/Senate/5761-
S.E%20SBR%20HA%2022.pdf?q=20241007062537.

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

applicant" as "a person who has made and submitted a bona fide application for
employment." Opening Br. at 43 (citing S.B. 6241, 68th Leg., Reg. Sess. (Wash.
2024); H.B. 2349, 68th Leg., Reg. Sess. (Wash. 2024)). Plaintiffs point out that
neither bill advanced past nomination, *id*., suggesting to plaintiffs that the
legislature endorsed a broad reading of "job applicant."  But we "generally decline
to speculate as to why the Legislature rejects a proposed amendment," "even where
an actual bill is before the Legislature." *In re Pers. Restraint of Andress*, 147
Wn.2d 602, 611, 56 P.3d 981 (2002) (citing *Spokane County Health Dist. v.
Brockett*, 120 Wn.2d 140, 153, 839 P.2d 324 (1992)). Here, the legislature did not
even "reject" the bills by vote; the bills failed to advance to a vote. Our precedent
bars us from giving any weight to these failed bills or the hypothetical reasons that
they might have failed.

In sum, the legislative history strongly suggests intent to protect workers
actually seeking job offers, period.

B.  L&I's interpretation

The interpretation of the phrase "job applicant" by the very agency that
proposed its addition to the statute—L&I—compels the same conclusion. While
we retain ultimate authority to interpret a statute, we may place weight on an

17

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

agency's interpretation of an ambiguous statute if "the particular agency is charged

with the administration and enforcement of the statute" and "the statute falls within

the agency's special expertise." *Bostain*, 159 Wn.2d at 716; *City of Redmond v.*

*Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091

(1998). L&I meets both requirements, so its interpretation of "job applicant" is

persuasive.[11]

   "Although agency policies do not have the force of law, this court can look

to them to interpret statutes with undefined terms." *Richardson v. Dep't of Lab. &*

*Indus.*, 6 Wn. App. 2d 896, 909 & n.38, 432 P.3d 841 (2018) (citing *Stevens v.*

*Brink's Home Sec., Inc.*, 162 Wn.2d 42, 54, 169 P.3d 473 (2007) (Madsen, J.,

concurring)). Total Wine points to L&I policy materials that support its contention

that a "job applicant" under RCW 49.58.110(4) must be one who has a real interest

in obtaining a job offer. For example, the cover sheet for the EPOA complaint

form states, "L&I will investigate complaints filed by applicants who have applied

to a job in good faith with the intent of gaining employment." WASH. DEP'T OF

---

[11] The majority argues that we should not place weight on L&I's interpretation of "job applicant" because the legislature did not grant L&I rulemaking authority with regard to RCW 49.58.110(4). Majority at 12; Reply Br. at 30. But the legislature did grant rule making authority to L&I to enforce RCW 49.58.060. RCW 49.58.090. Interpreting "job applicant" is a necessary part of L&I's enforcement of RCW 49.58.060, since that statute applies to job applicants and employees. RCW 49.58.110(4).

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

LAB. & INDUS., EQUAL PAY & OPPORTUNITIES ACT COMPLAINT FORM (July 2025),

https://lni.wa.gov/forms-publications/F700-200-000.pdf [https://perma.cc/FH2P-

2CWL]. Other L&I materials confirm that the agency "will investigate complaints

filed only by applicants who have applied to jobs in good faith with the intent of

gaining employment" and that "L&I will generally only assess damages when an

applicant can establish that they have been harmed by the posting." *Equal Pay &

Opportunities Act Common Questions*, WASH. DEP'T OF LAB. & INDUS.,

https://lni.wa.gov/workers-rights/wages/equal-pay-opportunities-act/equal-pay-

and-opportunities-act-qa (EPOA Q&A) [https://perma.cc/47JZ-DWRH].[12] Those

materials also state that "[a] formal complaint should be submitted if a person has

applied to an available position in good faith with the intent of gaining

employment and believes the job posting does not comply with the job posting

requirements." *Id.* By contrast, if a person "sees a job posting they believe does not

comply with the [EPOA] pay transparency requirements, but they do not intend to

---

[12] L&I policy materials also state that "All applicants, including existing employees, who apply to a posting recruiting Washington-based employees . . . are protected by the law." WASH. DEP'T OF LAB. & INDUS., ADMIN. POLICY ES.E.1, at 4 (L&I Employment Standards), https://www.lni.wa.gov/workers-rights/_docs/ese1.pdf [https://perma.cc/ZU66-GZA2]; Reply Br. at 31 (quoting EPOA Q&A). Plaintiffs argue that this broad phrasing supports their expansive reading of "job applicant." But read in the context explained above, the most reasonable conclusion is that that L&I interprets "job applicant" as a person who needs to be "protected by the law"—that would be a person with a real interest in obtaining a job offer.

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

apply for the available position or do not wish to file a formal complaint," the

person should submit a tip. *Id.* This language suggests that L&I interprets "job

applicant" as a person with a real interest in obtaining a job offer.

It is certainly true that in September 2024, L&I published preliminary draft

rule language that would have defined the term "applicant" as an individual "who

submits in good faith an application for a job posting with the intent of gaining

employment." Pls./Appellants' Statement of Additional Auths., Attach. A at 1.

And in October 2024, seven members of the House of Representatives sent a

public comment letter requesting that L&I amend its proposed definition because

"[r]equiring a job applicant to prove subjective 'intent' adds a new element to the

cause of action in order to access remedies [and] would frustrate a key purpose of

the statute." *Id.*, Attach. B. After that, L&I removed the definition of "applicant"

from its next draft. *Id.*, Attach. C at 1.

The majority interprets L&I's amendment to that draft rule language as an

indication that L&I does not interpret "job applicant" to mean a person with a real

stake in obtaining a job. But L&I did not change the language on the EPOA

complaint form, on the informational Q&A website, or in the administrative policy

statement discussed above. In those published materials, L&I continues to express

the view that a job applicant is a person with a real stake in the application process.

20

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)

Further, statements by individual legislators that postdate enactment of a bill—like

this letter from seven members of the House of Representatives written and sent

well after the enactment of RCW 49.58.110(4) and its "job applicant" limitation—

"should not be viewed as a reflection of legislative intent." *Nelson v. McClatchy*

*Newspapers, Inc.*, 131 Wn.2d 523, 532 n.5, 936 P.2d 1123 (1997*)* (legislators'

statements about a bill several years after its passage "should not be viewed as a

reflection of legislative intent" (citing *State v. Leek*, 26 Wn. App. 651, 657-58, 614

P.2d 209 (1980))). Thus, I would decline to give these representatives' statements,

and L&I's subsequent withdrawal of its proposed narrowing definition of

"applicant," such dispositive weight.

### CONCLUSION

The statutory language, context, statement of purpose, and history show that

the legislature enacted the EPOA to protect workers seeking job offers. Those

sources also show that the legislature accomplished that goal by requiring

employers to provide such workers with the pay and benefit information that is

relevant to a job search or a salary negotiation. There is nothing in the statutory

language, context, statement of purpose, or legislative history suggesting that the

legislature had any intent to incentivize individuals to search the web for

noncompliant postings in order to reap a reward unrelated to actual harm.

21

*Branson v. Wash. Fine Wine & Spirits, LLC*, No. 103394-0
(Gordon McCloud, J., dissenting)


I therefore respectfully dissent. I would answer the certified question as follows: A "job applicant" is "a person who responds to a job posting by submitting an application with the intent to gain an offer of employment." This interpretation is supported by the statutory text, context, legislative history, and relevant agency interpretation. This definition would ensure that the EPOA remains accessible to those whom it was intended to protect—real job applicants and employees who need pay information to make critical decisions. It would also ensure that the EPOA does not cause the unintended consequences that result from the majority's conclusion.


_____
Gordon McCloud, J.

_____
Johnson, J.

_____
González, J.

22